Lily-Penn Food Stores, Inc., d/b/a Cumberland Farms, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Milk Marketing Board et al., Respondents.

Argued March 5, 1979, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*Wayne M. Thomas,* with him *David H. Weinstein; Kohn, Savett, Marion & Graf;* and, of counsel, *Sheldon A. Weiss,* for petitioner.

*Daniel T. Flaherty,* Chief Counsel, with him *Harold Swope,* and *Daniels and Swope,* for respondents.

OPINION BY JUDGE WILKINSON, JR., April 18, 1979:
On December 2, 1976, the Suburban Philadelphia Milk Dealers Association and six individual dairies (hereafter collectively referred to as respondents) petitioned the Pennsylvania Milk Marketing Board (Board) to conduct hearings on the question of wheth-

er the Southeastern Milk Marketing Area 1 (hereafter simply Area 1) should be subdivided into two marketing zones. Hearings were held on April 19 and 20, May 20 and June 21, 1977. Thereafter, the Board issued the adjudication and General Order No. A-813 here in question which established two zones in Area 1, Zone 1 consisting of Philadelphia and Delaware Counties and those portions of Bucks and Montgomery Counties south of the Pennsylvania Turnpike and Zone 2, consisting of Chester County and those areas of Bucks and Montgomery Counties north of the Pennsylvania Turnpike. Historically General Order No. A-813 amends General Order No. A-793 established a year earlier which had expanded Area 1 to include all five counties into one marketing area and reverts back to pre-A-793 orders which had established a separate marketing area for Chester and portions of Bucks and Montgomery Counties, albeit along geographical lines different from the Pennsylvania Turnpike.

Petitioner, which operates 22 convenience stores selling dairy products in Area 1, eleven of which are located in Zone 2, filed the instant appeal, contending the Board's findings lack sufficient specificity for adequate appellate review, that the Board exceeded its statutory authority in creating the new zones and that there was insufficient evidence to support the Board's order.[1] Having examined the record, we conclude that the Board's General Order No. A-813 must be affirmed.

---

[1] On May 26, 1978 the Board filed a motion to dismiss the Petition for Review, alleging petitioner is without standing to appeal as a party aggrieved by the action of the Board. We dismiss the motion finding petitioner has alleged the requisite direct and substantial interest in General Order No. A-813 to establish standing to appeal from the order. *See Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975).

A total of seven witnesses testified at the hearings before the Board; they included: a representative of respondents' association who testified favoring the creation of two zones, specifically proposing using the Pennsylvania Turnpike as a natural dividing line; three witnesses opposing the creation of two zones, a statistician, petitioner's sales manager and a milk marketing expert; the executive secretary of the Board; and two staff members of the Board. Respondents' witness presented the results of a number of statistical studies showing a substantial dissimilarity between costs and cost differentials to dealers within Area 1 as between the metropolitan and suburban counties and a substantial similarity in those statistics between the suburban counties in Area 1 and Milk Marketing Area 2. This witness also testified that within the year suburban milk dealers had been included in Area 1, those dealers showed a net operating loss in controlled sales of $189,500, and a net operating profit of $183,000 in non-controlled sales. This evidence also indicated that the milk dealers proposing the zones represented 33.1 percent of the total sales in the proposed Zone 2 and 6.5 percent of the total sales in Area 1. Petitioners' witnesses testified as to the similarities within Area 1, the advantages of combining urban and suburban markets to allow increased competition and reduced prices in consumer sales through volume sales and lower costs to consumers achieved through milk sales in supermarkets, all marketing techniques which were available and in use throughout Area 1. A staff report submitted by the audit supervisor of the Board detailed the history of the creation of Area 1, and while not recommending the adoption of any boundary line, noted the substantial degree of difference in the suburban and urban areas of Area 1 and the substantial degree of similarity with Area 2 and the suburban

counties of Area 1. On cross-examination the audit supervisor testified that while county lines were the traditional means of defining areas or zones for the purpose of milk marketing, they were not necessarily the only logical and reasonable means of defining market areas.

Turning to petitioner's first argument that the Board's findings are inadequate for the proper exercise of appellate review, we note that the essential test in determining the adequacy of findings of fact is whether those findings admit to any speculation in determining what elements of testimony the Board relied upon in reaching its conclusion. After reviewing the testimony before the Board, we find no confusion in determining what testimony the Board found relevant and probative in determining the issue before it. The question before the Board was whether two zones should be created in Area 1 and if so what the geographical boundary between those zones should be. In its Finding of Fact (6) the Board found respondent's witness "demonstrate[d] the highly significant differences between the topography and demography of the areas of Bucks and Montgomery Counties north of the Pennsylvania Turnpike and all of Chester County and the areas of Bucks and Montgomery Counties south of the Turnpike and all of Philadelphia and Delaware Counties: and further that this witness "demonstrate[d] the differences of margins available to dealers computed from raw milk to established Board prices between Milk Marketing Area I . . . and the two adjoining milk marketing areas. . . ." Conversely in Finding of Fact (9) the Board found petitioner's District Sales Supervisor's testimony "inaccurate and misleading"; in Finding of Fact (10) the Board found the statistician's conclusion "unjustified" in light of subsequent testimony; and finally in Finding of Fact (11) the Board

found the milk cooperative witness was unfamiliar with milk distribution or costs in the Philadelphia area. From these findings, it is clear at least to this Court that the Board found the testimony of respondent's witness relevant and probative, that it accepted as fact that the statistical data demonstrated that a separate zone should be created in Area 1 and that it accepted the petitioner's boundary line.

Petitioner's argument that the Board exceeded the scope of its statutorily defined duty is equally without merit. Section 801 of the Milk Control Law (Law), Act of April 28, 1937, P.L. 417, *as amended,* 31 P.S. §700j-801, provides, "The board shall ascertain . . . the logical and reasonable milk marketing areas within the Commonwealth, [and] shall describe the territorial extent thereof. . . ." Since the Law does not provide a definition of or the determining factors to be considered in ascertaining a "logical and reasonable" area, this decision is left to the discretion of the Board. Thus, the question is reduced to whether the Board has abused its discretion. To constitute an abuse of discretion, the Board must have based its conclusion to divide Area 1 into two zones upon wholly arbitrary grounds, in capricious disregard of competent evidence. Petitioner argues that there was no evidence to show the proportionate shares of sales represented by respondents within each of the proposed zones establishing the reasonableness of the creation of such zones. Petitioner's focus on sales and shares of a given market ignores the express mandate of the Legislature that the Board consider in defining a market area that which will "best protect the milk industry of the Commonwealth and insure a sufficient quantity of pure and wholesome milk to inhabitants of the Commonwealth, having special regard to the health and welfare of the children residing therein." Section 801, 31 P.S.

§700j-801. Contrary to the petitioner's evidence that there was no justification for a separate zone in terms of retail, out-of-stores sales, is the evidence of respondents that milk dealers within suburban Philadelphia suffered losses as a result of competition with high volume dealers. This, coupled with the staff report which noted that such high volume dealers effectively bid themselves out of the market for supplying school districts within the suburban area goes to the heart of the matter. The weight of all this evidence was for the Board and not this Court to weigh and evaluate.

Finally, we address petitioner's last argument that the Board's order is not supported by any relevant or competent evidence. What we have said thus far is equally relevant here. Those matters, particularly statistical data which are capable of a reasonable ground of difference in interpretation raise technical questions within the Board's expertise and will not be disturbed by this Court "[s]o long as the [Board] has a record to support what it has done in its findings and conclusions. . . ." *City of Pittsburgh v. Milk Marketing Board*, 1 Pa. Commonwealth Ct. 300, 310, 275 A.2d 115, 121 (1971), *cert. dismissed*, 415 U.S. 902 (1974). It is clear from the Board's findings of fact that it found the testimony of respondent's witness relevant and credible on the issue of whether a separate zone should be established and the boundary line separating the two zones. Moreover, the staff report made by the Board's audit supervisor supports the conclusion that a different marketing zone should be established in the suburban Philadelphia area.

Accordingly, we will enter the following

ORDER

AND Now, April 18, 1979, the Official General Order No. A-813 of the Pennsylvania Milk Marketing

Board, dated September 19, 1977, effective October 1, 1977, is hereby affirmed and the Motion to Dismiss the Petition for Review is denied.