635 A.2d 1110

**MILK MARKETING, INC., Petitioner,**

**v.**

**PENNSYLVANIA MILK MARKETING BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1993.

Decided Dec. 28, 1993.

John G. DiLeonardo, for petitioner.

Randall N. Sears, Chief Counsel, for respondent.

Allen C. Warshaw, for intervenor, Pennsylvania Ass'n of Milk Dealers.

Before PALLADINO and KELLEY, JJ., and LORD, Senior Judge.

KELLEY, Judge.

Milk Marketing, Inc. (MMI) petitions for review of Official General Order A–874 of the Pennsylvania Milk Marketing Board which denied MMI's request that all over-order premiums mandated by the board be pooled and distributed to all eligible Grade A milk producers in the Western Milk Marketing Area (Area 5) and the Central Milk Marketing Area (Area 6).

The relevant facts in this matter, as found by the board, can be summarized as follows. MMI is a milk marketing cooperative that operates in eight states and whose Pennsylvania members produce approximately 520 million pounds of milk annually. A majority of the milk produced by MMI's Pennsylvania members is marketed in Pennsylvania Milk Marketing Areas 5 and 6.

By letter dated April 15, 1992, MMI requested the board that all premiums [1] mandated by it be pooled among all

---

1. Testimony presented during the hearing referred to "quality and supply premiums" and the "over-order premium". The term "over-order premium" refers to the amount the board requires to be paid for milk in addition to the federally established minimum price. "Quality and supply premiums" are amounts voluntarily paid in addition to the mandated minimum price because of the quality or availability of milk.

eligible Grade A producers.[2] The MMI proposal (referred to as "market-wide pooling"), was submitted for Areas 5 and 6 only.[3]

The board held hearings on this matter on June 17, 1992 and July 17, 1992. Based on these hearings, the board determined that the effect of the MMI proposal would be to prevent dealers in Milk Marketing Areas 5 and 6 from paying the full over-order premium to the producers from whom they directly purchase milk. Dealers in Milk Marketing Areas 1, 2, 3, and 4, however, would be able to pay their producers the full over-order premium. The board opined that under MMI's proposal, dealers from Milk Marketing Areas 1, 2, 3, and 4, would have an advantage over dealers in Milk Marketing Areas 5 and 6 in competing for those producers who produce the highest quality milk. It was the position of the board that MMI's proposal, if implemented, could destabilize existing milk markets and adversely affect consumers in Milk Marketing Areas 5 and 6.

The board also determined that the establishment of a market-wide pool would require the creation of an expanded administrative structure resulting in a further reduction in the amount of money paid to producers. For all the foregoing reasons, the board declined to establish a market-wide pool of over-order premiums in Milk Marketing Areas 5 and 6.

 We note at the outset that we may only review the discretionary acts of public officials upon a showing of fraud, bad faith, capricious action, or abuse of discretion. *Lily Penn Food, Inc. v. Pennsylvania Milk Marketing Board*, 80 Pa.Commonwealth Ct. 266, 472 A.2d 715 (1984) (*Lily Penn III*). To constitute an abuse of discretion, the board must have based its conclusion upon wholly arbitrary grounds, in capricious disregard of competent evidence. *Lily Penn Food,*

The MMI proposal concerns only the board mandated over-order premium.

2. Grade A milk is milk that can be used for human consumption.

3. MMI concedes that the establishment of a market-wide pool and its funding mechanism represents a question of first impression before any Pennsylvania Court of Appeals.

*Inc. v. Pennsylvania Milk Marketing Board,* 42 Pa.Commonwealth Ct. 92, 400 A.2d 661 (1979) (*Lily Penn I* ). The dispute in this case boils down to a disagreement as to the best method to regulate the price structure of the milk industry in the Commonwealth.

The intent of the Milk Marketing Law (Law), Act of April 28, 1937, P.L. 417, *as amended,* 31 P.S. §§ 700j–101 through 700j–1204, is clear. The board must consider the interest of (1) the producers of milk, (2) the transporters, processors and sellers of dairy products, and (3) the consuming public. *City of Pittsburgh v. Milk Marketing Board,* 1 Pa.Commonwealth Ct. 300, 307–08, 275 A.2d 115, 120 (1971).

The crux of MMI's argument on appeal is that Official General Order A–874 constitutes an abuse of discretion, impermissibly ignores competent and uncontroverted expert testimony, and is based upon findings at variance with facts adduced in hearings conducted before the board.

In its brief, MMI concedes that the Law does not specifically provide for the establishment of a market-wide pool or equalization pool; however, MMI argues that section 700j–302 includes the power to establish the equalization pool. Section 700j–302 provides as follows:

> The operation and effect of any provision of this act conferring a general power upon the board shall not be impaired or qualified by the granting to the board by this act of a specific power or powers.

31 P.S. § 700j–302.

MMI also cites section 700j–301 for the proposition that the board is vested with power including the establishment of reasonable trade practices. 31 P.S. § 700j–301.

While representing an accurate statement of the cited sections of the Law, MMI cannot direct this court to, nor has our research found any Pennsylvania appellate caselaw that supports its theory that the board improperly exercised its discretion by denying MMI's request for the establishment of a market-wide pool.

■ MMI also argues that the board abused its discretion by failing to comment in its decision on the expert evidence developed before the board. We disagree and find that the board's decision sufficiently reflects the testimony of record. Furthermore, MMI fails again to cite any caselaw which requires the board to make specific credibility determinations on each witness appearing before it.

In the present matter, the board heard from a number of witnesses who testified in favor of a market-wide pooling system. Based on our review of the board's opinion, it appears that the board adequately considered all the testimony and evidence before it and properly exercised its role as fact finder in fashioning its decision.

Based on our review of the entire record in this case, we agree with the board that the establishment of a market-wide pooling system is, at most, a matter of board discretion. We conclude that there exists sufficient evidence to support the board's decision and we further find that the board's decision declining to establish a market-wide pool does not constitute an abuse of discretion. The action of the board in this matter is consistent with its powers under the Law.

Accordingly, we affirm the order of the board.

## ORDER

NOW, this 28th day of December, 1993, the general order of the Pennsylvania Milk Marketing Board, No. A–874, is affirmed.